FILED

2020 Aug-04  PM 01:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EVETTE CLELAND | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Case** |
| | ) | **Number:** _____ |
| LIFE INSURANCE COMPANY | ) | |
| OF NORTH AMERICA | ) | |
| | ) | |
| **Defendant** | ) | |

## COMPLAINT

Comes now the Plaintiff, Evette Cleland, and hereby files her complaint against Life Insurance Company of North America ("LINA").

## PARTIES

1.     The Plaintiff, Evette Cleland ("Mrs. Cleland"), is an insured under Group Long Term Disability Plan for employees of PetSmart, Inc. identified as Group Insurance Policy LK-980201 ("the Plan"), who has been improperly denied disability benefits under the Plan.

2.     Defendant LINA is the Administrator of the Plan. Upon information and belief, LINA is a foreign corporation which conducts business generally in the State of Alabama and specifically within this District.

1

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Mrs. Cleland brings this action to recover benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(3).   This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4.     The Plaintiff in this case was subjected to improper claim handling procedures by LINA as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Mrs. Cleland's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit Plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Mrs. Cleland, as an employee insured for disability, was supposed to be treated as a beneficiary by LINA as a statutory fiduciary. Instead, LINA has breached those duties and victimized Mrs. Cleland by

engaging in improper claim handling procedures. As described in more detail below, LINA has clearly engaged in bad faith claim handling and Mrs. Cleland, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.      Mrs. Cleland is an insured for benefits under the Plan. LINA is the administrator of the Plan. The Plan provides insureds, like Mrs. Cleland, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6.      At all relevant times, Mrs. Cleland was employed by PetSmart, Inc. and was a covered participant in the Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.

7.      Mrs. Cleland, a woman fifty-two years of age, worked at PetSmart, Inc. until her disabilities forced her to stop working on or about March 10, 2017.

8.      Mrs. Cleland was employed by PetSmart, Inc. as an Assistant Store Leader, whose job duties required that she interact with customers and perform retail transactions, process freight, enact financial plans for controllable expenses, maintain store operations, create weekly schedules and payroll reports, coach staff, maintain store metrics, and maintain facilities. In order to perform these duties, Mrs. Cleland was required to regularly stand, walk, and use her hands; to frequently lift and move up to fifty pounds, reach, stoop, kneel, crouch, crawl, talk, and hear; and to occasionally sit, climb, balance, and lift or move up to one hundred pounds.

9.     Mrs. Cleland's medical disabilities include systemic lupus erythematosus, chronic fatigue syndrome, hypothyroidism, neuropathy, inflammatory arthritis, tremors, major depressive disorder, and generalized anxiety disorder. The symptoms of her impairments and the side effects of the medications and treatment prescribed render Mrs. Cleland unable to perform any job.

10.     By letter dated April 19, 2018, LINA wrongfully denied Mrs. Cleland's LTD benefits.

11.     The Plan at issue, as governed by ERISA and relied upon to deny Mrs. Cleland's long term disability benefits states, in part:

Definition of Disability/Disabled

The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1. unable to perform the material duties of his or her Regular Occupation; and
2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

12.     LINA's initial denial of Mrs. Cleland's LTD benefits was based at least in part upon the paid review of Dr. Aneta Predanic ("Dr. Predanic") and Dr. Steven St. Clair ("Dr. St. Clair").

13.     At all relevant times, and prior to the denial of Mrs. Cleland's benefits, she was under the consistent care of her primary care physician, Dr. Ajay Patel ("Dr. Patel"); rheumatologist, Dr. Nopporn Unnoppet ("Dr. Unnoppet"); psychiatrist, Dr.

Alicia Austin ("Dr. Austin"); and neurologist, Dr. Diane Counce ("Dr. Counce").

14.     LINA hired Dr. Predanic and Dr. St. Clair, paid reviewers, to consider Mrs. Cleland's treatment records and evaluate whether Mrs. Cleland met the Plan's definition of disability.

15.     In a report completed on March 27, 2018, Dr. Predanic, who has never seen or spoken with Mrs. Cleland or her medical providers, concluded that the opinions of Mrs. Cleland's treating providers were not supported by the medical file and that Mrs. Cleland was not functionally limited due to her psychiatric conditions.

16.     Dr. St. Clair, who has never seen or spoken with Mrs. Cleland or her treating physicians, stated in a report dated March 27, 2018 that the treating provider's opinion was not well-supported and that Mrs. Cleland had no co-limiting conditions and required no limitations or restrictions.

17.     The conclusion that Mrs. Cleland and her medical providers did not provide objective evidence sufficient to prove disability and that Mrs. Cleland remained capable of performing her own occupation contradicted the medical records, which noted lab work showing positive antinuclear antibody and positive Smith antibody in conjunction with clinical symptoms including malar rash, oral ulcers, photosensitivity, and hair loss which supported a diagnosis of systemic lupus erythematosus. This conclusion was likewise contrary to the opinion of Mrs. Cleland's treating primary care physician, who noted on December 11, 2017 that

exhaustion, stress intolerance, low physical and mental capacity, severe joint aches, and mobility-impacting pain secondary to lupus erythematosus prevented a return to work.

18.     Although neither Dr. Predanic nor Dr. St. Clair had treated Mrs. Cleland, spoke to Mrs. Cleland, or even attempted to speak with her treating physicians, these paid reviewers nevertheless determined that Mrs. Cleland had the functionality to return to her previous occupation.

19.     Dr. Predanic's and Dr. St. Clair's opinions as reflected in the termination letter dated April 19, 2018, failed to consider Mrs. Cleland's non-exertional limitations.

20.     Although the medical opinions of Mrs. Cleland's treating physicians were based upon objective evidence and substantial treatment history, LINA gave more weight to the paid reviewers' opinions over the opinions of Mrs. Cleland's treating providers, and by letter dated April 19, 2018 wrongfully denied Mrs. Cleland's LTD benefits.

21.     At all relevant times of LINA's review of Mrs. Cleland's claim, LINA had the contractual right to obtain better evidence of Mrs. Cleland's disability by ordering an independent medical examination.

22.     Rather than ordering Mrs. Cleland to sit for an independent medical examination, LINA relied on a paid record review to support its denial of LTD

benefits.

23.    On June 13, 2018, approximately two months following the denial of Mrs. Cleland's LTD benefits, LINA notified Mrs. Cleland that a prior denial of Short Term Disability benefits had been overturned, thereby acknowledging that Mrs. Cleland was incapable of performing her own occupation.

24.    At the time LINA denied LTD benefits on April 19, 2018, it had no information, from Dr. Predanic's or Dr. St. Clair's paid reviews or otherwise, that showed Mrs. Cleland's medical condition had improved, when in fact, Mrs. Cleland's treating physicians opined that her condition continued to deteriorate.

25.    By and through counsel, in a letter dated October 16, 2018, Mrs. Cleland appealed the denial of her LTD benefits. Mrs. Cleland included with her appeal letter additional records from Dr. Unnoppet, Dr. Counce, Dr. Patel, and Dr. Ashley Gooding outlining the decline of her condition, as well as a recent letter of approval for short term disability benefits from LINA dated June 13, 2018.

26.    On October 17, 2018, by and through counsel, Mrs. Cleland provided updated medical records from Dr. Austin.

27.    A May 14, 2018 psychiatric note from Dr. Austin noted Mrs. Cleland to be having difficulty coping with lupus and to experience decreased energy secondary to this diagnosis.

28.    Despite providing proof of her disability throughout the elimination

period, following the denial of benefits, and throughout the appeals process, LINA refused to award Mrs. Cleland's LTD benefits and issued a second denial by letter dated February 13, 2019.

29.     In its denial letter dated February 13, 2019, LINA relied on the opinions of paid medical reviewers Dr. Stephen Gelfand ("Dr. Gelfand"), Dr. Julia Shakh ("Dr. Shakh"), and Dr. Randall Updegrove ("Dr. Updegrove").

30.     Despite medical documentation of elevated anti-Sm antibody tests; numerous reported conditions indicative of systemic lupus erythematosus including malar rash, oral ulcers, joint pain, and alopecia; and prior diagnoses of systemic lupus erythematosus necessitating prescribed Hydroxychloroquine from Mrs. Cleland's treating providers, Dr. Gelfand reported in his December 3, 2018 review that Mrs. Cleland was instead most likely to have asymptomatic serological lupus. Dr. Gelfand, who has never seen or treated Mrs. Cleland, thus asserted that systemic lupus erythematosus was unlikely to be the source of Mrs. Cleland's chronic fatigue and exhaustion.

31.     LINA instructed Dr. Gelfand to contact only Dr. Patel, Mrs. Cleland's primary care physician, who had referred Mrs. Cleland for specialized rheumatology treatment for systemic lupus erythematosus with Dr. Unnoppet and thereafter focused his treatment on conditions such as hypothyroidism and asthma.

32.     No attempt was made by Dr. Gelfand or ordered by LINA to contact

Mrs. Cleland's treating rheumatologist, Dr. Unnoppet, who provided treatment for Mrs. Cleland's systemic lupus erythematosus and was most familiar with her symptoms and impairments related to this condition.

33.    Dr. Shakh acknowledged in her review dated December 11, 2018 that Mrs. Cleland's anxiety, depression, PTSD symptoms, panic, and affective symptoms "are severe enough, in my opinion, to create difficulty with activities of daily living, which would include the ability to work," throughout the Elimination Period of March 11, 2017 and June 9, 2017, but no later.

34.    Despite noting "clear errors" in the provider notes and "inconsistent and at times contradictory" mental status examinations during Mrs. Cleland's psychiatric treatment, which Dr. Shakh noted necessitated taking the narrative portions of the notes "at face value," Dr. Shakh did not attempt to contact Mrs. Cleland's treating psychiatrist for clarification.

35.    Dr. Updegrove, who has never seen or spoken with Mrs. Cleland or her treating providers, issued his review to LINA on January 8, 2019 and asserted that the medical file did not support functional restrictions secondary to Mrs. Cleland's hypothyroidism, asthma, neuropathy, tremors, and chronic fatigue syndrome.

36.    Dr. Updegrove ruled out a diagnosis of peripheral neuropathy by citing a March 26, 2018 EMG/NCVS as normal, disregarding Dr. Counce's treatment note from the same day which documented decreased pinprick sensation in a stocking

glove formation indicative of clinical peripheral neuropathy, likely representing a small fiber neuropathy which would not be demonstrable on the EMG/NCVS.

37.     Dr. Updegrove dismissed Mrs. Cleland's additional medical conditions, such as chronic fatigue, hypothyroidism, and asthma, as non-impairing without attempting to contact Dr. Patel, who had at that point treated these chronic conditions for a number of years.

38.     Although neither Dr. Shakh nor Dr. Updegrove had treated Mrs. Cleland, spoke to Mrs. Cleland, or even attempted to speak with Mrs. Cleland's treating physicians, these paid reviewers concluded that Mrs. Cleland now had the functionality to return to her previous occupation.

39.     Dr. Gelfand never spoke with Mrs. Cleland, and contacted only one of her physicians who did not even treat Mrs. Cleland for the diagnosis at issue; nevertheless, Dr. Gelfand concluded that Mrs. Cleland's diagnosis of systemic lupus erythematosus was incorrect and that she had the functionality to return to her previous occupation.

40.     LINA again failed to exercise their contractual right to obtain better evidence of Mrs. Cleland's disability by ordering an independent medical examination.

41.     In a letter dated August 9, 2019, by and through counsel, Mrs. Cleland appealed the denial of her LTD benefits. Mrs. Cleland included with her appeal letter

additional medical records from her rheumatologist as well as a prescription history.

42.    On August 26, 2019, by and through counsel, Mrs. Cleland provided updated medical records from Dr. Patel, Dr. Austin, and Dr. Christopher A. King from Alabama Cardiovascular Group.

43.    Treatment notes from Dr. Patel from October 2018 to April 2019 indicated consistent complaints of fatigue and weakness, while Dr. Austin's notes spanning November 2018 through March 2019 indicated ongoing psychiatric treatment for major depressive disorder and generalized anxiety disorder.

44.    In a letter dated August 13, 2019, LINA notified Mrs. Cleland that her second voluntary appeal would not be accepted, explaining that the information provided in this appeal was not time-concurrent to the period of review and instructing Mrs. Cleland to "please refer to the letter that was sent to you on February 13, 2019 for a list of what information would be needed for us to accept a voluntary appeal."

45.    In refusing to accept a second voluntary appeal, LINA failed to allow Mrs. Cleland an opportunity to review and respond to the paid reports issued by Dr. Gelfand, Dr. Shakh, and Dr. Updegrove, as Mrs. Cleland was only given access to these reports and informed of LINA's reliance upon its paid reviewers' opinions in the letter terminating benefits on February 13, 2019.

46.    LINA's denial letter of February 13, 2019 stated, with regard to a

11

second appeal request:

> "A second appeal request is not required but will be accepted if you have different or additional information to submit. Here is how to submit a second appeal review.
>
> - Submit your appeal letter to us within 180 days of your receipt of this letter.
> - Your appeal letter should be sent to the Life Insurance Company of North America representative signing this letter to the address noted on the letterhead.
> - Your appeal must include written comments as well as any new information you may have.
> - You must also submit additional information. Additional information may include, but is not limited to: medical records from your client's doctor and/or hospital, test result reports, therapy notes, etc. These medical records should cover the period of June 10, 2017 through present."

47.    Mrs. Cleland's August 9, 2019 appeal included updated medical records from Dr. Unnoppet spanning 2018 and 2019, as well as additional discussion of how LINA's explanation for denial was deficient, fully complying with LINA's requirement for written comments and new information within the period of June 10, 2017 through the present.

48.    By letter dated August 27, 2019, Mrs. Cleland, by and through counsel, provided a response to LINA affirming the appropriateness of the information included in the August 9, 2019 appeal and exhorting LINA to accept and consider this appeal.

49.    On September 4, 2019, LINA responded to Mrs. Cleland informing her that they were unable to accept this appeal and claiming that the appeal letters dated

August 9, 2019 and August 26, 2019 did not contain "time concurrent medical information."

50.   Mrs. Cleland responded to LINA, by and through counsel, on September 12, 2019, noting that a failure to allow a second voluntary appeal would be a breach of LINA's fiduciary duty.

51.   LINA reaffirmed their stance in a letter dated September 20, 2019, in which LINA again refused to accept Mrs. Cleland's second appeal as the information provided with this appeal was "not time concurrent."

52.   As of this date, Mrs. Cleland has been denied benefits rightfully owed to her under the Plan.

53.   Mrs. Cleland has met and continues to meet the Plan's definition of disabled.

54.   Mrs. Cleland has exhausted any applicable administrative review procedures and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

55.   LINA's refusal to pay benefits has caused tremendous financial hardship on Mrs. Cleland.

## STANDARD OF REVIEW

56.   A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe

the terms of the Plan.

57.    When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a heightened arbitrary and capricious standard of review.

58.    Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to LINA or to any other entity who may have adjudicated Mrs. Cleland's claim. Therefore, the Court should review Mrs. Cleland's claim for benefits under a *de novo* standard.

59.    Upon information and belief, LINA evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

60.    LINA has failed to comply with the letter of the claims procedures outlined in ERISA and therefore Mrs. Cleland's claim for benefits should be reviewed by this Court under a *de novo* standard.

61.    In the alternative, if the Court finds that LINA is entitled to the heightened arbitrary and capricious standard of review, the denial of Plaintiff's benefits constitutes a clear abuse of discretion as LINA's decision to deny Mrs. Cleland's LTD benefits was arbitrary and capricious.

### **DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT**

62.    LINA has wrongfully denied LTD benefits to Mrs. Cleland in violation

of the policy provisions and ERISA, for the following reasons:

(a) Mrs. Cleland is totally disabled, in that she is prevented from performing the material duties of her regular occupation;

(b) Mrs. Cleland is entitled to disability benefits under the terms of the Plan, as she meets the Plan's definition of disability and she has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) LINA failed to accord proper weight to the evidence in the administrative record showing that Mrs. Cleland is totally disabled;

(d) LINA's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

(e) LINA failed to allow Mrs. Cleland a right to access information upon which it relied to make a final determination, and failed to allow Mrs. Cleland an opportunity to respond to said information, before it made a final determination on her claim for LTD benefits;

(f) LINA failed to obtain and consider relevant information pertaining to Mrs. Cleland's disability before it made a final determination on her claim for LTD benefits;

(g) LINA wrongfully denied Mrs. Cleland a full, fair and impartial review of her benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking instead for credible evidence of marginal significance to support its goal of denying her benefits claim;

(h) LINA failed to give proper weight to Mrs. Cleland's own accounts regarding the debilitating effects of her pain and fatigue;

(i) LINA ignored the records and opinions of Mrs. Cleland's treating physicians which show that Mrs. Cleland is totally disabled, and instead based its decision to deny benefits on its internal review by LINA staff members and its paid reviewers, who had never seen or treated Mrs. Cleland, some of which never spoke with her treating physicians about the nature of her disability, and who were not as qualified as Mrs. Cleland's treating physicians to formulate opinions regarding the nature and extent of her disability;

(j) LINA failed to exercise reasonable flexibility in its claims review process to assure Mrs. Cleland a full, fair review, well-reasoned, and principle of her claim;

(k) LINA administered Mrs. Cleland's claim for LTD benefits while

16

acting under an inherent and substantial conflict of interest in that LINA served both as fiduciary of and funding source for the Plan, and placed its own pecuniary interests above Mrs. Cleland's interests in wrongfully denying her LTD benefits and failing to administer the Plan as an impartial decision-maker, free of such conflict of interest, would;

(l) LINA made erroneous interpretations of some evidence in violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(m)   LINA acted in bad faith by denying Mrs. Cleland's claim based upon the inability of LINA's paid reviewers to find Mrs. Cleland disabled, and otherwise failed to administer the Plan honestly, fairly and in good faith, and to at all times act in Mrs. Cleland's best interests;

(n) LINA denied Mrs. Cleland's benefits without the support of any new information that showed improvement in Mrs. Cleland's medical condition, when in fact, her treating physicians opined that her condition continued to deteriorate as it had since 2017;

(o) LINA failed to support the denial of benefits with any substantial evidence;

(p) LINA imposed a standard not required by the Plan's provisions, by requiring objective evidence of Mrs. Cleland's subjective medical conditions where such evidence cannot be reasonably provided;

(q) LINA denied Mrs. Cleland's claim for a lack of objective medical evidence when Mrs. Cleland has provided ample subjective evidence of a disability and LINA has neither identified any objective evidence that Mrs. Cleland could have supplied to support the claim and has not had Mrs. Cleland undergo an independent medical examination or a similar in-person probative procedure to test the validity of her complaints;

(r) LINA failed to consider Mrs. Cleland's non-exertional limitations caused by her disability, such as the side effects of her prescribed medication, her ability to regularly attend work, and the effect her disability has on her concentration, persistence and pace when performing the material duties of her occupation;

(s) LINA's termination of Mrs. Cleland's LTD benefits failed to provide a detailed explanation and the basis of its disagreement with the opinions of Mrs. Cleland's treating physicians;

(t) LINA failed to accept a second voluntary appeal of Mrs. Cleland's LTD benefits as allowed by the Plan, claiming a lack of "time

concurrent" information despite the relevance of the medical records provided with this appeal.

(u) LINA wrongfully denied Mrs. Cleland's LTD benefits in such other ways to be shown through discovery and/or hearing.

63.     As a result of the foregoing, the relief to which Mrs. Cleland is entitled includes: (1) monthly LTD income benefits to Mrs. Cleland, (2) payment of back benefits from  March 11, 2017, to the date of judgment, (3) pre-judgment interest, (4) equitable relief, including declaratory and injunctive relief, to redress LINA's practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

## COUNT ONE
## ERISA (Claim for Benefits Owed under Plan)

64.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

65.     At all times relevant to this action, Mrs. Cleland was a participant of the Plan underwritten by LINA and issued to PetSmart, Inc. and was eligible to receive disability benefits under the Plan.

66.     As more fully described above, the denial and refusal to pay Mrs. Cleland's benefits under the Plan for the period from at least on or about March 11,

2017 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Mrs. Cleland constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

### CAUSES OF ACTION

### COUNT TWO
### ERISA (Breach of Fiduciary Duty)

67.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

68.     LINA has breached the fiduciary duty it owed to Plaintiff by willfully failing to accept Plaintiff's supplemental appeal on several different occasions. LINA's conduct was a clear breach of its fiduciary duty and constitutes on its face arbitrary and capricious conduct.   Plaintiff requests that the Court apply a *de novo* level of review because of LINA's misconduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1.     A judgment ordering the applicable standard of review in this case is *de novo*;

2.     A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her LTD benefits owed to her through the Plan;

20

3.      In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4.      Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Mrs. Cleland's LTD benefits; that Mrs. Cleland is entitled to a continuation of future LTD benefits from Defendant pursuant to the Plan;

5.      Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff; enjoining Defendant from further violations of its fiduciary duties; and directing Defendant to take all actions necessary to administer the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6.      A judgment ordering Defendant to pay Mrs. Cleland's LTD benefits from March 11, 2017 through the date judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the date of judgment;

7.      An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8.      For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 4th day of August, 2020.


                                        */s/ Peter H. Burke*
                                        Peter H. Burke (ASB-1992-K74P)
                                        pburke@burkeharvey.com
                                        BURKE HARVEY, LLC
                                        3535 Grandview Parkway, Suite 100
                                        Birmingham, AL 35243
                                        Phone: 205-930-9091
                                        Fax: 205-930-9054
                                        *Attorney for Plaintiff Evette Cleland*



**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AT:**

Life Insurance Company of North America
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL  36104